IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

JORDAN WARREN; KIARA BOOKER;
BERNAMESHA YOUNG; MIYANA
BRYANT; KELLY O'DONALD; and
SHANTA BURNETT, each individually and
on behalf of all others similarly situated                                    PLAINTIFFS

v.                                          Case No. 4:23-cv-00977 KGB

MILLENNIA HOUSING
MANAGEMENT, LTD, *et al.*                                                      DEFENDANTS

## ORDER

Before the Court is a motion of defendants Millennia Housing Management, Ltd.,

Millennia Commercial Group, Ltd., Millennia Housing Development, Ltd., Millennia Housing

Capital, Ltd., SC Apartments AR, LLC, and John Does 1-10 to dismiss and to strike class

allegations in the complaint filed by plaintiffs Jordan Warren, Kiara Booker, Bernamesha Young,

Miyana Bryant, Kelly O'Donald, and Shanta Burnett, individually and on behalf of all others

similarly situated (Dkt. No. 13).  Plaintiffs responded in opposition to the motion (Dkt. No. 21).

Defendants filed a reply (Dkt. No. 24).  For the following reasons, the Court grants, in part, and

denies, in part, the motion (Dkt. No. 13).

### I.     Background

Plaintiffs filed this class-action lawsuit in Pulaski County, Arkansas, Circuit Court on

September 7, 2023, asserting claims in tort and contract against defendants arising out of the

conditions in hundreds of apartment developments across 26 states (Dkt. No. 1, at 2).  The

defendants are:   Millennia Housing Management, Ltd. ("MHM"); Millennia Housing

Development, Ltd. ("MHD"); Millennia Commercial Group, Ltd. ("MCG"); Millennia Housing

Capital, Ltd. ("MHC"); SC Apartments AR, LLC ("SC Apartments"); and John Does 1-10.[1]
MHM, MHD, MCG, and MHD will be collectively referred to as the "Millennia Defendants" as
appropriate.  Plaintiffs are all residents of Shorter College Gardens Apartments in North Little
Rock, Pulaski County, Arkansas, which is owned by defendant SC Apartments and managed by
defendant MHM (Dkt. Nos. 2, at 4; 14, at 14).

The complaint lists ten counts against all defendants (Dkt. No. 2, at 13–21):  "negligent
hiring, retention, supervision, and control, and failure to take remedial action" (Count I); premises
liability (Count II); negligence (Count III); "gross negligence" (Count IV); breach of contract
(Count V); breach of implied warranty of habitability (Count VI); unjust enrichment (Count VII);
respondeat superior (Count VIII); fraudulent misrepresentation (Count IX); and "punitive
damages" (Count X).  For these claims, plaintiffs seek $860 million in compensatory damages and
$4.3 billion in punitive damages from defendants (*Id.*, at 21).

On October 13, 2023, defendants filed a notice of removal from state court, invoking
federal diversity jurisdiction pursuant to 28 U.S.C. § 1332(d) (Dkt. No. 1, at 2).

### A.      Summary Of Allegations

To summarize the complaint (Dkt. No. 2), which including exhibits runs to 146 pages,
plaintiffs state that the Millennia Defendants collectively own and operate more than 280
apartment developments in 26 states, housing a total of more than 86,000 people, many of which
participate in rental assistance programs such as those offered by the United States Department of
Housing and Urban Development ("HUD") (*Id.*, at 6).  One of these "Millennia-owned properties"
is Shorter College Garden Apartments in North Little Rock, Arkansas, of which plaintiffs are

---

[1]   The complaint describes John Does 1-10 as "other individuals, persons, corporate persons, or entities who may be liable for all or part" of the allegations listed in the complaint but which plaintiffs have been unable to identify (Dkt. No. 2, at 5).

tenants (*Id.*, at 7).  Plaintiffs allege that, during the term of their tenancy, they have complained to "management professionals" about living conditions in their development, specifically including "the smell of gas and carbon monoxide, mold, bed bug and rodent infestation, inoperable heating and air conditioning units, trash pile-up, no hot water, inoperable elevators, defective plumbing, and other unsanitary and unsafe conditions" (*Id.*, at 8).  These conditions existed "at no fault of the tenants" (*Id.*, at 9).  Management in turn consistently "failed to respond to tenant complaints, failed to repair the defective condition, or misrepresented the nature and severity of the defect and the potential danger to tenants living on the premises" (*Id.*, at 8, 10).

Plaintiffs further allege that defendants represent that they use HUD Form 90105a for their lease agreements, which contractually obligates them to maintain the premises of the development in numerous ways, including "maintain[ing] the common areas and facilities in a safe condition," "mak[ing] necessary repairs with reasonable promptness," "provid[ing] extermination services, as necessary," etc. (*Id.*, at 9).  Moreover, defendants represented themselves as having a "commitment to service" and a "mission to provide affordable and quality housing" (*Id.*).  Plaintiffs allege that they entered into their lease agreements "[a]s a result" of these representations (*Id.*).

Finally, plaintiffs assert that complaints like theirs are "common among tenants in most, if not all, of Defendants' affordable housing apartment communities" (*Id.*, at 8).  This includes defendants' alleged "practice of misrepresenting or concealing defects, failing to repair defects reported by tenants, and allowing known dangerous conditions to exist" (*Id.*).  In support of these allegations, plaintiffs cite various news articles from across the country detailing complaints against Millennia-affiliated properties (*Id.*, at 8–9, 24–107).  In the light of this allegedly widespread pattern of abuse and neglect, plaintiffs request class certification pursuant to Federal

Rule of Civil Procedure 23,[2] seeking to represent a nationwide class of "[a]ll residents of Defendants' apartments listed in Exhibit 29 at any time within the past three years from the date of this Class Complaint to the present" (*Id.*, at 10).  The complaint lists a total of 18 proposed common questions of fact related to the conditions in apartment developments owned or managed by defendants, as well as "[o]ther issues to be proven at trial" (*Id.* at 11–12).

### B.    Summary Of Motion To Dismiss And Strike

On November 10, 2023, defendants filed a motion to dismiss and strike the class allegations (Dkt. No. 13), as well as a brief in support (Dkt. No. 14).  In their motion to dismiss, defendants advance three arguments.

First, defendants argue that the Court lacks personal jurisdiction over MCG and MCD (*Id.*, at 8–11).  They assert that, because MCG and MCD are incorporated in Ohio and have their principal place of business there, and because they do not conduct any operations in Arkansas, they are not subject to general personal jurisdiction in Arkansas (*Id.*, at 9–10).  They further state that neither MCG nor MCD is registered to do business in Arkansas and that neither has an agent in Arkansas for service of process (*Id.*, at 10).  Defendants also argue that the Court lacks specific jurisdiction over MCG and MCD because, contrary to plaintiff's assertions that defendants jointly own and operate Shorter College Garden Apartments, they have no connection with the development (*Id.*, at 10–11).

Second, defendants argue that plaintiffs fail to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) (*Id.*, at 11–25).  They assert that the complaint is nothing more than a "shotgun pleading" that fails to meet Rule 8's requirements

---

[2]  The complaint refers to "Arkansas Rule of Civil Procedure 23," as the case was originally filed in state court (Dkt. No. 2, at 10).

because it "lump[s] all defendants and plaintiffs together without explaining who did what to whom" (*Id.*, at 12–13). They further claim that plaintiff has failed to allege a theory showing how any of the Millennia Defendants may properly be held liable in tort or contract as third parties to the lease agreement between plaintiffs and SC Apartments (*Id.*, at 14) or for that matter any specific breach committed by SC Apartments (*Id.*, at 19–20). Likewise, they claim that plaintiffs have failed to allege with specificity what damages they have suffered (*Id.*, at 15–16).

Defendants assert in the same vein that the complaint fails to state any actionable claim. They argue that: Count I fails because it is based upon duties that do not exist under Arkansas law with respect to landlords (*Id.*, at 17–19); Count II fails because premises liability does not apply to tenants under Arkansas law (*Id.*, at 20); Count III fails because plaintiffs do not specifically plead a violation of any duty in recognized in Arkansas Code Annotated § 18-16-110 (*Id.*, at 18); Count IV fails because gross negligence is not recognized as a cause of action under Arkansas law (*Id.*, at 25); Count V fails because plaintiffs fail to identify a specific lease term breached by SC Apartments (*Id.*, at 19–20); Count VI fails because Arkansas law does not recognize the implied warranty of habitability (*Id.*, at 20–22); Count VII fails because the existence of a contract governing the dispute precludes an unjust enrichment claim under Arkansas law (*Id.*, at 24–25); Count VIII fails because it is based upon duties that do not exist under Arkansas law with respect to landlords (*Id.*, at 17–18); Count IX fails because it does not meet the heightened pleading standard for fraud claims of Rule 9(b) as "[a]ll defendants are combined" in the complaint and "no time or place is given" (*Id.*, at 22–24); and Count X fails because punitive damages is not a cause of action under Arkansas law (*Id.*, at 25).

Third, defendants argue that the Court should strike the nationwide class allegations with prejudice. They assert that a nationwide class of 86,000 tenants is not certifiable because plaintiffs

"fail to identify any common questions capable of proof with common evidence," as the analysis would necessarily require a "property-by-property or even tenant-by-tenant inquiry" (*Id.*, at 27–30).  Moreover, the inquiry would require individualized issues of law, as the 26 states in which the developments in question are located each have their own common and statutory law governing landlord-tenant relationships (*Id.*, at 33–38).

Plaintiffs filed a response in opposition to the motion to dismiss (Dkt. No. 21).  Against defendants' argument that personal jurisdiction does not exist with respect to MCG and MCD, plaintiffs assert that the Millennia Defendants are alter egos of each other for all intents and purposes, noting that they publicly hold themselves out as an integrated business operation and that their management and directorates are functionally integrated (*Id.*, at 7–17).  Relatedly, they note that defendant SC Apartments is owned and operated by Millennia Defendants (*Id.*, at 24).  Thus, the Court should pierce the corporate veil for purposes of exercising personal jurisdiction over Millennia Defendants.  Plaintiffs ask in the alternative for the Court to grant jurisdictional discovery (*Id.*, at 6 n.1).

Against defendants' argument that the complaint fails to state a claim upon which relief can be granted, plaintiffs argue that they have properly pled violations of their lease terms and applicable HUD regulations governing those agreements (*Id.*, at 20–22).  They argue that they have properly pled a claim for breach of the implied warranty of habitability because Arkansas Code Annotated § 18-17-502(h) contemplates enforcement of HUD regulations mandating "minimum living standards" (*Id.*, at 23).  Furthermore, plaintiffs state that they have met Rule 9(b)'s requirements with respect to pleading fraud claims because plaintiffs have plausibly alleged that defendants functionally operate as a single entity (*Id.*, at 23–24).  They claim their unjust enrichment claim is also properly pled because they do not have a contractual relationship with

the Millennia Defendants as such and because they allege defendants received rental payments and other subsidies to which they were not entitled and were unjustly enriched thereby, and that plaintiffs suffered damages on this account (*Id.*, at 24–25).

Against defendants' argument that the class allegations be struck, plaintiffs argue that the complaint meets the requirements of Rule 23, emphasizing that defendants' affordable housing developments are governed by national HUD standards and that plaintiff alleges a common pattern among the properties in question of "failure to minimal standards of habitability [sic], failure to maintain its premises in safe, sanitary conditions; and failure to eradicate defective conditions despite notice" (*Id.*, at 30–31). The Court, they argue, should allow discovery to proceed and resolve the class issue at the class certification stage (*Id.*, at 27–29).

Defendants filed a reply to plaintiffs' response in opposition to the motion to dismiss (Dkt. No. 24). In their reply brief, defendants attack plaintiffs' alter ego theory of personal jurisdiction on grounds that there is no parent-subsidiary relationship among the Millennia Defendants and that, even if MHM did act as a parent, its contacts cannot be imputed to its alleged subsidiaries MCG and MHC (*Id.*, at 6–7). They argue in the same vein that operating under a common trade name and having "some of the same people own or support multiple different entities" is insufficient to establish alter ego (*Id.*, at 9–10).

In support of their Rule 12(b)(6) claims, defendants in their reply attack plaintiffs' claim that HUD regulations govern their leases, noting that HUD regulations do not create a right of action for tenants against landlords and arguing that they do not create a separate duty under Arkansas law (*Id.*, at 13–14). They likewise state that HUD regulations do not create a common law implied warranty of habitability under Arkansas law (*Id.*, at 15), and that plaintiffs cannot use an unjust enrichment claim against the Millennia Defendants as an "end run" around their contract

with SC Apartments (*Id.*, at 16).  With respect to the 9(b) issue regarding the fraud claim, defendants argue that plaintiffs' "single business enterprise" allegations as to the Millennia Defendants were not properly alleged in the complaint and that such will not excuse the requirement to identify "which defendant said what where" (*Id.*, at 16–17).  They further state that plaintiffs have failed to allege when each defendant saw any statement or how they relied upon them and that most of the alleged statements are non-actionable puffery (*Id.*, at 13–14).

Finally, defendants in their reply brief argue that, with respect to the class allegations, plaintiffs have failed to point to any common evidence that could answer their proposed common questions and ignore variations in state law (*Id.*, at 18–20).

## II.   Discussion

### A.   Personal Jurisdiction

"To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that personal jurisdiction exists." *K-V Pharmaceutical Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591 (8th Cir. 2011) (quoting *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004)).  This occurs when the plaintiff "plead[s] sufficient facts to support a reasonable inference that the defendant can be subjected to jurisdiction within the state." *Id.,* at 591–92.  The evidentiary showing required at the *prima facie* stage is minimal. *Id.* at 592.  The showing "must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and in opposition thereto." *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004) (internal quotation and citation omitted).  This is because the party seeking to establish personal jurisdiction carries the burden of proof. *Laseraim Tools, Inc. v. SDA Manufacturing, LLC*, 624 F. Supp. 2d 1027, 1031 (E.D. Ark. Dec. 22, 2008).  However, personal jurisdiction over the defendant need not be proved by a preponderance of the evidence until trial

or until the Court holds an evidentiary hearing.  *Dakota Industries v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1387 (8th Cir. 1991).  "If the district court does not hold a hearing and instead relies on pleadings and affidavits . . . the court must look at the facts in the light most favorable to the nonmoving party, and resolve all factual conflicts in favor of that party."  *Dakota Industries*, 946 at 1387.

In this case, Arkansas's long-arm statute allows for the exercise of personal jurisdiction to the maximum extent permitted by due process.  Ark. Code Ann. § 16-4-101.  Due process requires that the defendant have "minimum contacts" with the forum state such that exercising jurisdiction does not offend "traditional conceptions of fair play and substantial justice."  *Id.*  (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)); *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  To this end, the Eighth Circuit has formulated a list of five factors that must be considered in determining whether sufficient minimum contacts exist for due process purposes:

> (1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts; (3) the relationship of the cause of action to the contacts; (4) the interest of [the forum state] in providing a forum for its residents; and (5) the convenience or inconvenience to the parties.

*K-V Pharmaceutical*, 648 F.3d at 591 (quoting *Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010)).  The third factor distinguishes specific from general personal jurisdiction.  *Johnson*, 614 F.3d at 794.  If the defendant's contacts are "continuous and systematic," the court may exercise jurisdiction generally regardless of whether the lawsuit arises out of contacts directed at the forum. *Id.*  If not, the court may exercise specific jurisdiction where the defendant has purposefully directed activities at the forum state and the lawsuit "arises out of" or "relates to" these activities. *Id.*  (quoting *Lakin v. Prudential Securities, Inc.*, 348 F.3d 704, 707 (8th Cir. 2003)).

Turning to the arguments, plaintiffs premise personal jurisdiction on the theory that the Millennia Defendants are "alter egos" of MHM, the alleged parent corporation and "proverbial

mothership" (Dkt. No. 21, at 9–10).  In other words, they ask that the Court "pierce the corporate veil" for jurisdictional purposes and disregard the legal distinction among the various Millennia entities.  The result would be to impute MHM's contacts with Arkansas through Shorter College Gardens Apartments to the other Millennia entities.  !

The Eighth Circuit has found that if a "resident subsidiary corporation is the alter ego of the nonresident corporate defendant, the subsidiary's contacts are those of the parent corporation's, and due process is satisfied."  *Epps v. Stewart Information Services Corp.*, 327 F.3d 642, 649 (8th Cir. 2003).  However, there is no hard and fast rule to determine whether one corporation is the alter ego of another:

> *Even a non-owned corporation may act as agent for another corporation*.  No all embracing rule has been laid down under which the relationship between two corporations may be determined.  The circumstances in each case must be examined to determine whether a corporation through the activities of another corporation has subjected itself to jurisdiction in a state under its long arm statute.

*Id.* (quoting *Lakota Girl Scout Council, Inc. v. Havey Fund–Raising Management, Inc.*, 519 F.2d 634, 637 (8th Cir. 1975)) (emphasis in original).  Thus, a court's assertion of jurisdiction in these instances is generally "contingent on the ability of the plaintiffs to pierce the corporate veil."  *Id.* State law is used to determine whether and how to pierce the corporate veil.  *Id.*

In this case, each of the Millennia Defendants is organized under the laws of Ohio (Dkt. No. 2, at 4–5), and SC Apartments is organized under the laws of Arkansas (*Id.*, at 5).  Arkansas courts have never squarely addressed the issue of choice of law in the context of jurisdictional veil-piercing.  *See Container Life Cycle Management LLC v. Safety Management Services Co.*, Case No. 6:20-cv-06001, 2020 WL 2843224, at *3 (W.D. Ark. June 1, 2020).  Yet *Yanmar Co. v. Slater*, 386 S.W.3d 439 (Ark. 2012), in which the Arkansas Supreme Court examined whether personal jurisdiction could be established over a Japanese company based on the theory that it was an alter

ego of its American subsidiary, offers some guidance.  In conducting its analysis, the Arkansas Supreme Court did not apply the corporate veil-piercing inquiry of either Arkansas or the domestic subsidiary's state of incorporation but instead looked to whether the parent company "dominated and controlled its subsidiary [] such that personal jurisdiction can be predicated on the relationship between the two companies."[3]  *Id.* at 448.  In doing so, the Arkansas Supreme Court found persuasive the Eighth Circuit's reasoning in *Epps v. Stewart Information Services Corp.*, 327 F.3d 642, 649 (8th Cir. 2003), *Anderson v. Dassault Aviation*, 361 F.3d 449 (8th Cir.2004), and *Viasystems, Inc. v. EBM–Papst St. Georgen GmbH & Co.*, KG, 646 F.3d 589 (8th Cir.2011).  *See id.* at 447.  Notably, the court conducted its jurisdictional analysis without direct reference to the veil-piercing inquiry used for imposing substantive liability under Arkansas law.

*Yanmar*, following the Eighth Circuit in *Epps*, offers support for the proposition that "attributing the conduct of a subsidiary to a parent within a given forum" is a matter of whether the parent "so controlled and dominated the affairs of the subsidiary that the latter's corporate existence was disregarded so as to cause the residential corporation to act as the nonresidential corporate defendant's alter ego."  *Id.* (quoting *Viasystems, Inc.*, 646 F.3d at 596).  Applying that

---

[3]  In any case, the Court observes that the requirements for piercing the corporate veil under Arkansas law, *see K.C. Properties of N.W. Arkansas, Inc. v. Lowell Investment Partners*, LLC, 280 S.W.3d 1, 32 (Ark. 2008); *Fulmer v. Hurt*, 515 S.W.3d 129, 134 (Ark. Ct. App. 2017) (determining that, to invoke the exceptional circumstances of piercing the corporate veil, "a plaintiff must have evidence of fraud, illegal conduct, or abuse of an entity for the specific purpose of injuring a third party"), and Ohio law, *see Dombroski v. WellPoint, Inc.*, 895 N.E.2d 538, 544 (Oh. 2008) (determining that piercing the corporate veil should be the "rare exception" that should only be "applied in the case of fraud or certain other exceptional circumstances"); *Belvedere Condominium Unit Owners' Association v. R.E. Roark Companies, Inc.*, 617 N.E.2d 1075, 1086 (Oh. 1993), appear to be substantially the same.  Moreover, given the plausible fraud allegations in the complaint, the Court finds that the requirements for veil-piercing would be satisfied under either standard at this stage of the litigation.

standard to the facts at hand, the Court finds that the Millennia Defendants are alter egos of each other for jurisdictional purposes. This Court recognizes that veil piercing is a factually intensive inquiry, and it acknowledges the possibility of prematurely deciding this issue on a motion to dismiss. On a Rule 12(b)(6) motion to dismiss, the Court accepts the alleged factual allegations as true and makes all reasonable inferences that can be drawn in the plaintiffs' favor. *Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012). In the present case, the complaint fairly infers that the Millennia Defendants materially failed to follow corporate formalities and operated as if they were a singular business entity in their dealings with the plaintiffs. Plaintiffs have bolstered this argument sufficiently at this stage of the litigation through jurisdictional evidence provided with their response in opposition to the motion to dismiss (Dkt. No. 21). This evidence shows *prima facie* that the Millennia Defendants and SC Apartments, beyond merely sharing a common website or operating in partnership, appear to operate functionally as a single unified enterprise. This apparent reality is reflected in their marketing, leadership, and organization.

First, the Millennia website consistently refers to the "Millennia Companies"—a trademark used by the Millennia Defendants to refer to themselves collectively—as a single entity running an integrated business operation (Dkt. Nos. 21-1; 21-2, at 2). The Millennia website refers repeatedly to a unified "mission" and the various Millennia limited liability companies are referred to as "teams" that play different supporting roles in the Millennia operation; for example, MHD is referred to as the "development team" and MHM as the "management team" (Dkt. Nos. 21-2; 21-9, at 2). Unlike in other cases where district courts have declined to find alter ego jurisdiction, the division among companies here is not one of independent businesses, of producer and distributor, or of holding and operating companies, but rather is "organized according to business lines." *See In re Vitamins Antitrust Litigation*, MDL No. 1285, 2001 U.S. Dist. LEXIS 25073, at *31 (D.D.C.

2001).  MHM appears to handle management services for Millennia properties, MHD handles the

acquisition and redevelopment of those properties, and MHC and MCG provide real estate services

and "equity and debt placement for the Millennia Companies® asset acquisitions" (Dkt. Nos. 21,

at 9–10; 21-9, at 2).

Second, ownership of the Millennia Companies and SC Apartments is entirely unified.  The

Millennia Defendants are all Ohio limited liability companies, each of which appears to be owned

entirely by Frank T. Sinito (Dkt. Nos. 21-3–21-6), who is referred to as the "principal" of the

Millennia operation (Dkt. No. 21-9, at 2).

Third, leadership of the Millennia entities and SC Apartments appears to be entirely

unified.  The Millennia website appears to list a single consolidated board of directors for all of

the Millennia Companies, with a single Chief Executive Order, Treasurer, Chief Financial Officer,

Chief Administrative Officer, Vice President, Vice President for Human Resources, Vice President

of Information Technology, Vice President of Compliance, Director of Purchasing and

Procurement, and Executive Vice President of Compliance and Community Affairs (Dkt. No. 21-

7).  MHD and MHM also appear to be represented on the Board by various vice presidents and an

operations manager, but the other Millennia companies do not even enjoy this level of

representation (*Id.*).  Frank T. Sinito serves as the CEO of the consolidated Millennia Companies

and Malisse Sinito as its Treasurer, and the Sinito name figures prominently among the board's

other members as well.  Frank T. Sinito is listed as the "Incorporator/Organizer" of SC Apartments

(Dkt. No. 21-10, at 1).

Fourth, there appears to be no separation of offices or contact information among the

Millennia Defendants.  The Millennia website appears to list a single address, phone number, and

fax number for all of the Millennia companies—suggesting there is no functional distinction among them (Dkt. No. 21-9, at 4).

The Court acknowledges that none of these factors, standing alone, would be sufficient to establish that the Millennia Defendants and SC Apartments are alter egos of each other for jurisdictional purposes.  However, weighing them together, the Court finds that the record at this stage of the litigation is sufficient to make out a *prima facie* case that the Millennia Defendants and SC Apartments are alter egos of each other.  For all practical purposes, accepting plaintiffs' allegations as true at this stage, the "Millennia Companies" is dominated and controlled by a unified ownership, leadership, organization, and public image such that the separate corporate existences of the various Millennia operating companies is disregarded per *Yanmar* and *Epps*.

It is worth distinguishing the facts here from *Epps* itself.  In that case, the Eighth Circuit found that an out of state parent holding company, SISCO, was not subject to jurisdiction in Arkansas because "SISCO's mere ownership of Stewart Guaranty [the owner of the in-state subsidiary] is too distant and limited a contact with Arkansas" to justify jurisdiction.  *Epps*, 327 F.3d at 650.  Moreover, the plaintiffs failed to show any direct connection between SISCO and the actual in-state subsidiary, Stewart Title.  *Id.*  Those facts are a far cry from the present case, where the Millennia entities appear to be practically indistinguishable in terms of their actual business operations, at least on the present record.

Defendants point out that merely operating under a common trade name, via a unified website, or through common marketing is insufficient to establish jurisdiction, citing various cases from other district courts in the Eighth Circuit to this effect (Dkt. No. 24, at 8–10).  *See Clary v. Spectrum Brands Holdings, Inc.*, Case No. 4:22-cv-3230, 2023 WL 3568519, at *2–3 (D. Neb. May 19, 2023); *TrueNorth Companies, L.C. v. TruNorth Warranty Plans of North America, LLC*,

423 F. Supp. 3d 604, 615 (N.D. Iowa 2019); *Wesson v. Lamb AB*, Case No. 1:17-cv-1061, 2018 WL 11320712, at *6 (W.D. Ark. June 18, 2018); *Arnold v. AT & T, Inc.*, 874 F. Supp. 2d 825, 834–36 (E.D. Mo. 2012); *Cepia, L.L.C. v. Alibaba Group Holding Ltd.*, Case No. 4:11-cv-273, 2011 WL 5374747, at *6 (E.D. Mo. Nov. 8, 2011).  However, these cases are distinguishable. Here, the complete unity in ownership, leadership, and business operation evident from the Millennia Defendants' public pronouncements and articles of organization—at least insofar as the record indicates at this stage of the litigation—demonstrates "such a complete unity of interest and ownership" that the Millennia entities "cannot be separated."  *TrueNorth Companies*, 423 F. Supp. 3d at 615.  Unlike in the above-cited cases, here there is "more than a speculative inference that [defendants] are alter egos."  *Wesson*, 2018 WL 11320712, at *6.

Defendants also argue that the Court should not find personal jurisdiction to exist because, unlike in most instances in which the alter ego doctrine is invoked, plaintiffs here "seek to impute the alleged parent's contacts to its alleged subsidiaries" (*Id.* at 7).  They contend that a finding of jurisdiction as to MHC and MCG would "make any subsidiary susceptible to personal jurisdiction in any state where its parent corporation is subject to personal jurisdiction for any claim" (*Id.*). This is not the case.  Although plaintiffs refer to MHM as the parent and "proverbial mothership" (Dkt. No. 21, at 10, 24), the Court does not rest its finding of jurisdiction on this basis.  MHC and MCG are not subject to personal jurisdiction in Arkansas because they are subsidiaries of MHM, but rather because the Millennia entities appear *prima facie* to be indistinguishable alter egos of each other.  Courts have consistently found that the alter ego analysis is flexible and context-dependent.  The Eighth Circuit emphasized in *Epps* that "[e]ven a non-owned corporation may act as agent for another corporation" and that "[t]he circumstances in each case must be examined to determine whether a corporation through the activities of another corporation has subjected itself

to jurisdiction in a state under its long arm statute." *Epps*, 327 F.3d at 649.  Simply put, regardless of the precise legal nature of the relationship among the Millennia companies and SC Apartments, the facts of this case indicate that the contacts of the Millennia Defendants and SC Apartments may be imputed to each other for jurisdictional purposes under the standards laid out in *Yanmar* and *Epps*.  Given that no party disputes that this Court has jurisdiction over MHM, MHD, or SC Apartments for purposes of this case, the Court is thus satisfied that it has personal jurisdiction over MHC and MCG.

For these reasons, the Court finds at this stage of the litigation that it has personal jurisdiction over MHC and MCG.

### B.    Rule 12(b)(6) Standard

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff [has pleaded] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  The Court makes "this determination by considering only the materials that are necessarily embraced by the pleadings and exhibits attached to the complaint. *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 910–11 (8th Cir. 2016).  "When ruling on a motion to dismiss, the district court must accept the allegations contained in the complaint as true and all reasonable inferences from the complaint must be drawn in favor of the nonmoving party." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001). The complaint must be construed liberally, and any allegations or reasonable inferences arising therefrom must be interpreted in the light most favorable to the plaintiffs. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554–56 (2007).  Accordingly, a well-pleaded complaint will survive a

motion to dismiss even if it appears recovery is very remote and unlikely. *Id.* The Court will address in turn each of the claims listed in the complaint under this standard.

### 1.    Negligence Claims

Counts I–IV and VIII of the complaint state general claims for negligence, premised on the assertion that defendants have a general duty to "exercise ordinary care," "maintain the premises in a reasonably secure and safe condition," and "protect the Plaintiffs and the class from reasonably foreseeable injuries occurring on the premises" (Dkt. No. 2, at 13–16, 18–19). Defendants counter that landlords are not liable to tenants in negligence under Arkansas law (Dkt. No. 14, at 17–19).

The touchstone for liability in Arkansas landlord-tenant law is Arkansas Code Annotated § 18-16-110, which provides in full that:

> No landlord or agent or employee of a landlord shall be liable to a tenant or a tenant's licensee or invitee for death, personal injury, or property damage proximately caused by any defect or disrepair on the premises absent the landlord's:
>
> (1) Agreement supported by consideration or assumption by conduct of a duty to undertake an obligation to maintain or repair the leased premises; and
>
> (2) Failure to perform the agreement or assumed duty in a reasonable manner.

In keeping with this policy, Arkansas courts have consistently maintained the doctrine of caveat lessee, pursuant to which landlords owe no duties to lessees beyond those contained in the lease agreement. *See generally Thomas v. Stewart*, 60 S.W.3d 415 (Ark. 2001). As such, there is no general liability in negligence for landlords. *See Franke v. Clinton William Holland Revocable Trust UAD Aug. 9, 2010*, 633 S.W.3d 772, 779–780 (Ark. Ct. App. 2021); *Brown v. Robinson Nursing; Rehabiliation Ctr., LLC*, Case No. 4:18-cv-00319, 2022 WL 256574, at *3 (E.D. Ark. Jan. 26, 2022). Indeed, Arkansas law "plac[es] almost no burden on the landlord to provide for the safety, sanitation, or condition of the leased property." *Angel v. Helena Renaissance 1, L.P.*, 669 S.W.3d 594, 605 (Ark. Ct. App. 2023) (quoting Howard W. Brill and Christian H. Brill,

*Arkansas Law of Damages* § 25.1 (6th ed. 2014)).  Even Arkansas Code Annotated § 18-17-502, which sets out certain minimum standards for living conditions that bind landlords, states that it shall not be construed to "[e]xpand a landlord's tort liability beyond the limits set by § 18-16-110."

It is thus clear that plaintiffs cannot make out a claim under Arkansas law for negligence, premises liability, or respondeat superior premised on general negligence (rather than an intentional tort) against defendants as their landlords.  Plaintiffs contend that their negligence claims do not fail because their lease agreements are governed by various HUD regulations (Dkt. No. 21, at 20–22), but such regulations have no bearing on Arkansas tort law.  Even if HUD's regulations are enforceable by tenants, it seems clear that such liability would flow from the lease agreement, not state tort law.  Additionally, with respect to Count IV (Dkt. No. 2, at 16), the Court notes, as plaintiffs concede in their response in opposition to the motion to dismiss (Dkt. No. 21, at 22), that there is no cause of action for "gross negligence" under Arkansas law.

For these reasons, the Court dismisses Counts I–IV and VIII of the complaint fail for failure to state a claim upon which relief can be granted.

### 2.     Unjust Enrichment

Count VII of the complaint states a claim for unjust enrichment based on defendants' "failure to maintain the premises, failure to provide adequate utilities and services, and failure to make necessary repairs, among other things, while continuing to collect rental payments from tenants" (Dkt. No. 2, at 18).

Unjust enrichment is an equitable doctrine imposed when one party has been unjustly enriched at the expense of another such that restitution is warranted.  *Servewell Plumbing, LLC v. Summit Contrs., Inc.*, 210 S.W.3d 101, 112 (Ark. 2005).  To state a cause of action for unjust enrichment in Arkansas, a plaintiff must plead four elements:  (1) the plaintiff suffered a detriment;

(2) the defendant received money from the plaintiff to which it was not entitled and which should be restored to the plaintiff; (3) there was some operative act, intent, or situation that made the alleged enrichment of the defendant unjust and inequitable; and (4) the amount by which the defendant was unjustly enriched. *Hall v. David H. Arrington Oil & Gas, Inc.*, Case No. 2:09-cv-0091, 2010 WL 1253383, at *2 (E.D. Ark. 2010).   The doctrine of unjust enrichment generally does not apply when an express contract exists governing the subject of the dispute between the parties. *KBX, Inc. v. Zero Grade Farms*, 639 S.W.3d 352, 365–366 (Ark. 2022); *Servewell Plumbing*, 210 S.W.3d at 112.   However, there are exceptions, including in cases where the "express contract does not exist, is void or does not provide an answer" to the subject of the dispute. *Campbell v. Asbury Auto., Inc.*, 381 S.W.3d 21, 23 (Ark. 2011); *Wallace v. XTO Energy, Inc.*, Case No. 4:13-cv-00608, 2014 WL 4202536, at *4 (E.D. Ark. 2014).

In this case, plaintiffs have plausibly alleged that defendants have committed a breach of their lease agreements.  The complaint is sufficient to establish:  (1) they suffered a detriment from defendants' failure to honor their lease obligations in the form of unjustified rental payments; (2) the defendants were unjustly enriched by those payments; (3) that defendants' systematic pattern of violations made the enrichment inequitable; and (4) the amount by which defendants were unjustly enriched.   Although defendants are correct to point out that the lease agreement will govern whether there has in fact been a breach (Dkt. No. 14, at 24–25), the unjust enrichment claim goes not to the breach itself, but rather to whether defendants have been unjustly enriched by rent payments to which they were not entitled.   This is sufficiently separate from a dispute over the terms of the lease itself to warrant invocation of an equitable remedy.  *See GM Enterprises, LLC v. HCH Toyota, LLC*, 567 S.W.3d 878, 884–885 (Ark. Ct. App. 2018).

For these reasons, the Court finds that Count VII of the complaint makes out as a plausible claim for unjust enrichment against all defendants.

### 3.        Breach Of Implied Warranty Of Habitability

Count VI of the complaint states a claim for breach of the implied warranty of habitability, alleging that defendants had a duty "to ensure that the premises were fit for human living" (Dkt. No. 2, at 17).

As mentioned above, Arkansas follows the doctrine of caveat lessee and generally does not impose obligations on landlords to maintain any standard of living conditions.  This extends to the implied warranty of habitability, which is not recognized under Arkansas landlord-tenant law. *Angel*, 669 S.W.3d at 604 (quoting Howard W. Brill and Christian H. Brill, *Arkansas Law of Damages* § 25.1 (6th ed. 2014)); Lynn Foster, *The Hands Of The State: The Failure To Vacate Statute And Residential Tenants' Rights In Arkansas*, 36 U. Ark. Little Rock L. Rev. 1, 45 (Fall 2013) ("Arkansas stands alone as the only state without an implied warranty of habitability."). Arkansas Code Annotated § 18-17-502 does contain some very minimal "implied residential quality standards," but to this Court's knowledge no Arkansas court has imposed liability under this statute, let alone found it to contain an implied warranty of habitability.

For these reasons, the Court dismisses Count VI of the complaint for failure to state a claim upon which relief can be granted.

### 4.        Fraudulent Misrepresentation

Count IX of the complaint alleges fraudulent misrepresentation on the basis that defendants represented that their "mission" was "preserving affordable housing, transforming communities, and enhancing lives through high-quality apartment communities" and that their property management professionals brought "vast experience" which they used to "focus on enhancing the

resident experience via activities and programs" (Dkt. No. 2, at 19).  Plaintiffs allege that they relied on these representations in entering into their lease agreements, and that these representations were false (*Id.* at 20).  Additionally, plaintiffs state that defendants misrepresented the nature of the defective conditions and subsequent repair efforts after these were reported by tenants, and that these representations "depriv[ed] tenants of available remedies or coerc[ed] them to take no action to avoid injury" (*Id.*).

In an action for fraudulent misrepresentation, plaintiffs must show triable issues of fact with respect to five elements:  (1) a false representation of material fact; (2) that the defendant knew that the representation was false or that there was insufficient evidence upon which to make the representation; (3) that the defendant intended to induce action or inaction by the plaintiff in reliance upon the representation; (4) that the plaintiff justifiably relied on the representation; and (5) that the plaintiff suffered damage as a result of the false representation.  *Waddell v. Ferguson Home Builders, LLC*, 513 S.W.3d 271, 277 (Ark. Ct. App. 2017) (citing *Muccio v. Hunt*, 490 S.W.3d 310, 312–313 (Ark. 2016)).

A higher pleading standard also applies to fraud claims under Federal Rule of Civil Procedure 9(b), which states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  To satisfy Rule 9(b), the Eighth Circuit has found that the complaint "must plead such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result."  *Olin v. Dakota Access, LLC*, 910 F.3d 1072, 1075 (8th Cir. 2018) (quoting *Olson v. Fairview Health Services of Minnesota*, 831 F.3d 1063, 1070 (8th Cir. 2016)).  In cases with multiple defendants, "the complaint should inform each defendant of the nature of his alleged participation in the fraud."  *Id.*

(quoting *Streambend Properties II, LLC v. Ivy Tower Minneapolis, LLC*, 781 F.3d 1003, 1013 (8th Cir. 2015)).  However, the mens rea may be pled generally.  Fed. R. Civ. P. 9(b).

Defendants argue that plaintiffs fail to meet Rule 9(b)'s pleading standard because the above-quoted advertising on the Millennia website is nothing more than inactionable "puffery" (Dkt. No. 14, at 22–24).  Although it is true that "a mere expression of opinion or puffery" is not actionable for deceit, it must be noted that an "expression of opinion that is false and known to be false at the time it is made is actionable."  *JKC Cellars, LLC v. Fort Chaffee Redevelopment Authority*, 670 S.W.3d 819, 826 (Ark. Ct. App. 2023); *see also Delta School of Commerce, Inc. v. Wood*, 766 S.W.2d 424, 427 (Ark. 1989) (contrasting inactionable "loose general statements" with actionable "specific and definite" statements).

Whether or not defendants' allegedly false advertising is actionable on its own, plaintiffs also allege that, after complaining to management about defects, defendants made misrepresentations about the defective conditions in the Shorter College Garden Apartments and about subsequent repair efforts (Dkt. No. 2, at 20).  Specifically, plaintiffs allege that the management staff sent a letter "misrepresenting that an inspection of the underground gas line infrastructure had taken place when it in fact had not" (*Id.*, at 9).  The letter itself is attached to plaintiff's complaint as Exhibit 1, dated October 18, 2022, and is undersigned "Shorter College Gardens Management Staff" with MHM letterhead (*Id.*, at 23).  This is clearly a specific statement of material fact.  Plaintiffs aver that misrepresentations such as this were intended to prevent them from taking advantage of any remedies they may have had and to "coerce" them against taking action, and that they detrimentally relied on these misrepresentations in continuing to pay rent and remain tenants (*Id.*, at 20).  Defendants object that plaintiffs have failed to plead adequately which of the defendants participated in the fraud or how, but the letter on its face specifically implicates

SC Apartments and MHM.  Further, this specific allegation lends support to plaintiffs' assertion that the expression of opinion from the Millenia website cited by plaintiffs was false and known to be false at the time it was made, thereby making those statements actionable as well.

This is sufficient to support a claim for fraudulent misrepresentation and satisfies the pleading standard of Rule 9(b).

### 5.    Breach Of Contract

Count V of the complaint alleges a claim for breach of contract.  Plaintiffs allege that their lease agreements require defendants to, among other things, "maintain the common areas and facilities in a safe condition," "maintain all equipment and appliances in safe and working order," and "provide extermination services, as necessary" (*Id.*, at 16–17).  Plaintiffs aver that, in violation of these provisions, their apartments have been afflicted with the "smell of gas and carbon monoxide, mold, bed bug and rodent infestation, inoperable heating and air conditioning units, trash pile-up, no hot water, inoperable elevators, defective plumbing, and other unsanitary and unsafe conditions" (*Id.*, at 8).  They further aver that management has taken no action to resolve these issues (*Id.*, at 8, 17).  This is sufficient to make out a plausible claim for breach of contract.

### 6.    Punitive Damages

Count X of the complaint purports to state a claim for punitive damages (*Id.*, at 20). Defendants assert (Dkt. No. 14, at 25), and plaintiffs now concede (Dkt. No. 21, at 22), that there is no independent cause of action for punitive damages under Arkansas law.  Recognizing that there is no independent cause of action for punitive damages, the Court construes references in the complaint to punitive damages as plaintiffs' request for that relief based on claims alleged and declines to dismiss the allegations at this stage of the litigation.

### C.    Class Allegations

Defendants ask the Court to strike plaintiffs' class allegations with prejudice under Federal Rule of Civil Procedure 12(f) because the proposed class is "on its face, not certifiable." (Dkt. No. 13, at 1).

Rule 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Judges enjoy liberal discretion to strike pleadings under Rule 12(f)." *BJC Health System v. Columbia Casualty Co.*, 478 F.3d 908, 917 (8th Cir. 2007). "A district court may grant a motion to strike prior to class action certification when 'it is apparent from the pleadings that the class cannot be certified under Rule 23(b)(2).'" *Rouse v. H.B. Fuller Company*, 694 F. Supp. 3d 1149, 1164 (D. Minn. 2023) (quoting *Donelson v. Ameriprise Financial Services, Inc.*, 999 F.3d 1080, 1094 (8th Cir. 2021)). However, courts must bear in mind that it is an "extreme and disfavored measure." *BJC Health System*, 478 F.3d at 917.

In this case, plaintiffs list 18 specific questions of fact alleged to be common to a nationwide class comprising tenants in Millennia-owned and operated developments across the country, such as whether Millennia apartments have gas leaks, mold, pest infestations, etc. (Dkt. No. 2, at 11). The proposed class presents obvious difficulties, such as the need for individualized determinations as to apartment conditions and state variations in landlord-tenant law. Yet variations in state law do not necessarily preclude class certification. *See In Re: Dollar General Corp. Motor Oil Marketing And Sales Practices Litigation*, Master Case No. 16-02709, 2017 WL 3863866, at *5–6 (W.D. Mo. 2017). On the whole, the Court views it as best to resolve the issue at the class certification stage, once this issue has been fully briefed and the record is better developed.

Defendants urge the Court to look to *Donelson v. Ameriprise Financial Services, Inc.*, 999 F.3d 1080 (8th Cir. 2021), in which the Eighth Circuit held that the district court's refusal to strike the plaintiff's class allegations under Rule 12(f) was an abuse of discretion.   The Court acknowledges that there is some force to this comparison, particularly as there appear to be issues of claim cohesiveness here similar to those the Eighth Circuit noted of the plaintiff's complaint in *Donelson*.  *See id.* at 1093.   However, unlike in *Donelson*, here there is not the added prejudicial factor of an arbitration agreement, which in *Donelson* meant that refusal to strike the class allegations immediately would "needlessly force the parties to remain in court when they previously agreed to arbitrate."  *Id.* at 1092.   In this case, the Court does not see the same harm here in adjudicating the issue upon a fuller record.

For these reasons, the Court denies defendants' motion to strike the class allegations under Rule 12(f).

### III.   Conclusion

For the foregoing reasons, the Court:

(1) denies the motion to dismiss for lack of personal jurisdiction (Dkt. No. 13);

(2) grants, in part, and denies, in part, the motion to dismiss for failure to state a claim upon which relief can be granted (*Id.*); and

(3) denies the motion to strike class allegations (*Id.*).

It is so ordered this 30th day of September, 2024.

Kristine G. Baker
Chief United States District Judge